IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JAMES WEAKLEY and HEATHER WEAKLEY,<br><br>      Plaintiffs,<br><br>v.<br><br>STATE FARM FIRE AND CASUALTY COMPANY, and JASON A. STRICKLAND, an individual,<br><br>      Defendants. | Case No. CIV-25-00091-JD |

## ORDER

Before the Court is the Motion to Remand ("Motion") filed by Plaintiffs James Weakley and Heather Weakley ("Plaintiffs"). [Doc. No. 14]. Defendant State Farm Fire and Casualty Company ("State Farm") filed a Response. [Doc. No. 17]. Plaintiffs filed a Reply. [Doc. No. 18]. State Farm, with leave of Court, filed a Sur-Reply. [Doc. Nos. 23, 24]. The parties have filed various notices of supplemental authority. [Doc. Nos. 20–22, 25–28]. Upon consideration, the Court denies Plaintiffs' Motion.

**I.    BACKGROUND**

Plaintiffs owned property in Tulsa County covered by a replacement cost coverage policy purchased from State Farm. [Doc. No. 1-2 ¶ 5]. Plaintiffs allege that Defendant Jason A. Strickland sold them the policy. [*Id.* ¶¶ 5, 7, 25(c)].

On March 31, 2023, a wind and hailstorm damaged the Insured Property. [*Id.* ¶ 40(a)]. Plaintiffs submitted a claim for storm damage to State Farm. [*Id.*]. An adjuster inspected the Insured Property for State Farm and concluded repair to the roof was

limited to the repair of individual shingles on a per shingle basis. [*Id.* ¶ 40(b)]. Plaintiffs allege the adjuster manipulated the damages assessment to fall below Plaintiffs' deductible for the dwelling of the Insured Property. [*Id.*].

The adjuster also concluded that the shop roof of the Insured Property had damage to the soft metals and to the metal fascia to the left elevation. [*Id.* ¶ 40(c)]. State Farm paid Plaintiffs' claim in the amount of $566.17 for this damage. [*Id.*]. Plaintiffs allege the adjuster manipulated the damages assessment to barely exceed Plaintiffs' deductible for the shop of the Insured Property. [*Id.*].

After multiple roofing companies observed widespread damage and told Plaintiffs that their dwelling roof required full replacement because it was a total loss, Plaintiffs submitted a request for reinspection, which State Farm denied. [*Id.* ¶¶ 40(e), 40(f)]. State Farm informed Plaintiffs that they would need to file a separate claim for hail damage because they had opened the claim as one for wind damage only. [*Id.* ¶¶ 40(f), 40(g)]. After additional communications with Plaintiffs, State Farm maintained only wind damage would be considered and that hail damage would require a separate claim to be filed to be reviewed. [*Id.* ¶¶ 40(h), 40(i)]. Plaintiffs allege that State Farm's failure to consider all wind and hail damage on their claim resulted in the denial of coverage for the dwelling roof of the Insured Property and a low claim payment for the shop. [*Id.* ¶ 40(m)].

Plaintiffs filed suit in the District Court of Oklahoma County against State Farm and Strickland. [*Id.* at 2].[1] Plaintiffs assert causes of action of negligent procurement and constructive fraud/negligent misrepresentation against Strickland. [*Id.* ¶¶ 60–79]. Specifically, Plaintiffs state as follows:

> By virtue of the act of procuring the Policy and binding coverage (without limitation), Agent independently selected and calculated coverage and expressly and/or inherently conveyed that such coverage limit was accurate, correct, commensurate with actual reconstruction costs, and represented 100% of the Insured Property's insurance to value.

[*Id.* ¶ 25(d)]. Plaintiffs also claim the agent made the following omissions: failing to inspect the property or procuring an inspection from a third party, failing to verify the Insured Property's condition, failing to disclose the property was ineligible for replacement cost coverage, failing to advise Plaintiffs the property had any defect or pre-existing damage or condition that would exclude the property or the roof from replacement cost coverage, failing to advise Plaintiffs of certain definitions relating to Plaintiffs' coverage, failing to ask Plaintiffs to calculate a specific amount of coverage, and failing to disclose to Plaintiffs that their coverage did not represent 100% insurance to value. [*Id.* ¶¶ 26(a)–(h)]. In addition, Plaintiffs claim Strickland's actions are part of a scheme by State Farm to deny coverage to its customers. [*See id.* ¶¶ 13–39].

State Farm removed the case to this Court, claiming Plaintiffs fraudulently joined Strickland to destroy diversity jurisdiction. [Doc. No. 1]. Plaintiffs move the Court to remand the case to the District Court of Oklahoma County. [Doc. No. 14].

---

[1] In this Order, the Court uses the page numbers from the top of the CM/ECF documents on this Court's docket.

## II.    STANDARD OF REVIEW

### A.    Diversity Jurisdiction

A case generally may be removed to federal court if it is one over which the federal courts have original jurisdiction. 28 U.S.C. § 1441(a). Original jurisdiction includes disputes between citizens of different states where the amount in controversy exceeds $75,000, exclusive of interest and costs. *Id.* § 1332(a)(1). Federal jurisdiction under 28 U.S.C. § 1332(a) requires "complete diversity" among the parties, meaning the citizenship of all defendants must be different from the citizenship of all plaintiffs. *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 89 (2005).

A party invoking diversity jurisdiction—here, State Farm—has the "burden of proving [diversity jurisdiction] by a preponderance of the evidence." *Middleton v. Stephenson*, 749 F.3d 1197, 1200 (10th Cir. 2014). Because federal courts are limited tribunals, "statutes conferring jurisdiction upon the federal courts, and particularly removal statutes, are to be narrowly construed." *Pritchett v. Off. Depot, Inc.*, 420 F.3d 1090, 1094–95 (10th Cir. 2005) (citing *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108–09 (1941)).

### B.    Fraudulent Joinder

The Supreme Court has long recognized that a defendant's "right of removal cannot be defeated by a fraudulent joinder of a resident defendant having no real connection with the controversy." *Wilson v. Republic Iron & Steel Co.*, 257 U.S. 92, 97 (1921); *see also Wecker v. Nat'l Enameling & Stamping Co.*, 204 U.S. 176, 185–86 (1907). The doctrine of fraudulent joinder permits a federal court to disregard the

4

citizenship of a nondiverse defendant against whom the plaintiff has not asserted or cannot assert a colorable claim for relief. *See Dutcher v. Matheson*, 733 F.3d 980, 988 (10th Cir. 2013); *see also Anderson v. Lehman Bros. Bank, FSB*, 528 F. App'x 793, 796 (10th Cir. 2013) (unpublished) (explaining that a case was properly removed where "the complaint fails to state a colorable cause of action" against the nondiverse defendant).

To establish fraudulent joinder, the removing party has the "heavy burden" to prove either: (1) actual fraud in the pleading of jurisdictional facts; or (2) the inability of the plaintiff to establish a cause of action against the nondiverse party in state court. *Dutcher*, 733 F.3d at 988. Here, State Farm's main arguments relate to Plaintiffs' inability to establish a cause of action against Strickland, so the Court's focus will be on the latter consideration. [*See* Doc. No. 17].[2]

If there is "a reasonable basis to believe the plaintiff might succeed in at least one claim against the non-diverse defendant," then the case must be remanded. *Nerad v. AstraZeneca Pharms., Inc.*, 203 F. App'x 911, 913 (10th Cir. 2006) (unpublished). "A

---

[2] State Farm also argues there is actual fraud in the pleading and points to numerous identical or nearly identical state-court petitions in support. [*See* Doc. No. 1 ¶ 33; Doc. No. 1-13; Doc. No. 17 at 28–32]. While this Court does not reach the issue, as it is unnecessary to do so, the Court notes that other judges in this district have expressed concern with this issue. *See Marino v. State Farm Fire & Cas. Co.*, No. CIV-22-0885-HE, 2023 WL 11915691, at *1 (W.D. Okla. Aug. 7, 2023) ("[T]he use of substantially identical, cookie-cutter allegations as to the claimed role of local State Farm agents, included in petitions filed in dozens of cases by the same group of lawyers, at the very least raises substantial questions as to whether a good faith basis exists for claims asserted here against the non-diverse agent."); *Goebel v. State Farm Fire & Cas. Co.*, No. CIV-22-0882-HE, 2023 WL 11883977, at *3 (W.D. Okla. Aug. 7, 2023) (concluding that false allegations "when viewed against the backdrop of the same formulaic, cookie-cutter allegations used in this and dozens of other similar cases" constituted "fraud in the pleadings of jurisdictional facts").

'reasonable basis' means just that: the claim need not be a sure-thing, but it must have a basis in the alleged facts and the applicable law." *Id.* In contrast, the nonliability of the defendant alleged to be fraudulently joined must be established with "complete certainty." *Smoot v. Chi., Rock Island & Pac. R.R. Co.*, 378 F.2d 879, 882 (10th Cir. 1967); *see Dodd v. Fawcett Publ'ns, Inc.*, 329 F.2d 82, 85 (10th Cir. 1964) (same).

Importantly, "upon specific allegations of fraudulent joinder the court may pierce the pleadings, consider the entire record, and determine the basis of joinder by any means available." *Smoot*, 378 F.2d at 882 (citations omitted). In this context, courts are not "compelled to believe whatever the plaintiff says in his complaint." *Brazell v. Waite*, 525 F. App'x 878, 881 (10th Cir. 2013) (unpublished). Courts are free to disregard conclusory allegations. *Id.* at 883 (explaining that where the plaintiff "makes conclusory allegations," the claim "was without merit and did not prevent removal"). "'[F]ederal courts may look beyond the pleadings to determine if the joinder, although fair on its face, is a sham or fraudulent device to prevent removal.'" *Id.* at 881 (quoting *Smoot*, 378 F.2d at 881–82).

The analysis is not a mini-trial where the Court weighs the evidence and makes a merits-based determination. As the Tenth Circuit has stated, "'[a] claim which can be dismissed only after an intricate analysis of state law is not so wholly insubstantial and frivolous that it may be disregarded for purposes of diversity jurisdiction.'" *Id.* (quoting *Batoff v. State Farm Ins. Co.*, 977 F.2d 848, 853 (3d Cir. 1992)). Finally, the Court resolves "all disputed questions of fact and all ambiguities in the controlling [state] law in favor of the non-removing party." *Montano v. Allstate Indem.*, No. 99-2225, 2000 WL

525592, at *1 (10th Cir. Apr. 14, 2000) (unpublished) (quoting *Hart v. Bayer Corp.*, 199 F.3d 239, 246 (5th Cir. 2000)).

### III.  ANALYSIS

Plaintiffs allege two claims against Strickland—negligent procurement and constructive fraud/negligent misrepresentation. [Doc. No. 1-2 ¶¶ 60–79]. The Court will consider Plaintiffs' allegations regarding each claim to determine whether Plaintiffs are able to assert a claim against Strickland in state court. In this diversity action, the Court must determine if Plaintiffs' claims have a reasonable basis in state court, thus applying Oklahoma law.

> **A.  State Farm has demonstrated that Plaintiffs do not have a reasonable basis for a negligent procurement claim against Strickland.**

The Court first considers whether State Farm has demonstrated that Plaintiffs lack a "reasonable basis" for their negligent procurement claim against Strickland. *Nerad*, 203 F. App'x at 913. Insureds can assert a tort claim for negligent procurement against their agent. "An agent has the duty to act in good faith and use reasonable care, skill and diligence in the procurement of insurance and an agent is liable to the insured if, by the agent's fault, insurance is not procured as promised and the insured suffers a loss." *Swickey v. Silvey Cos.*, 1999 OK CIV APP 48, ¶ 13, 979 P.2d 266, 269; *accord Oliver v. State Farm Fire & Cas. Co.*, 765 F. Supp. 3d 1244, 1249 (W.D. Okla. 2025). Plaintiffs argue that Strickland failed to provide the coverage they requested by procuring "illusory coverage" that deviated substantially and materially from that which Plaintiffs requested. [Doc. No. 1-2 ¶¶ 63(a)(i)–(ii)]. Specifically, Plaintiffs claim their policy did not

accurately reflect the replacement cost of the Insured Property and did not provide coverage to fully restore the Insured Property back to its pre-loss condition. [*Id.* ¶¶ 63(a)(iii)–(iv)].

The Court first considers whether Strickland procured the policy requested by Plaintiffs. Plaintiffs state they requested coverage that would fully replace their roof in the event of a loss. [*Id.* ¶ 25(b)]. They also state that they requested a replacement cost value policy. [*Id.* ¶ 25(a)]. By Plaintiffs' own admission, Strickland procured Plaintiffs a replacement cost policy. [*See id.* ¶ 5 ("Plaintiffs entered into a contract of insurance with State Farm to provide replacement cost coverage for the Insured Property. . . through Agent's offices."); *see also* [Doc. No. 1-7 ¶ 5 (State Farm admitting it issued to Plaintiffs the policy providing the "coverage as stated")]. Accordingly, any arguments that Plaintiffs did not receive a replacement cost policy are unavailing. [*See* Doc. No. 14 at 19–20].

Plaintiffs also claim Strickland's "specialized knowledge meant he knew or should have known about any defect to the roof that would negate full replacement *coverage*." [*Id.* at 20 (emphasis added)]. Accordingly, the Court must determine if Strickland breached an insurance agent's "duty to act in good faith and use reasonable care, skill and diligence in the procurement of insurance" by failing to provide the coverage requested by Plaintiffs. *See Swickey*, 1999 OK CIV APP 48, ¶ 13, 979 P.2d at 269. Plaintiffs identify several ways in which they allege Strickland breached his duty, including by failing to do the following:

> follow and abide by State Farm's underwriting policies/guidelines;

> perform all necessary inspections of the Insured Property;
>
> confirm the accuracy of the pre-filled information provided by State Farm's replacement cost estimating tool;
>
> disclose pre-existing damage to the Insured Property;
>
> verify whether its inherent representation to State Farm and Plaintiffs that the Insured Property (including the roof) was in good condition was accurate;
>
> procure and renew a policy that provided the requested coverage for all fortuitous losses; and
>
> disclose all material facts of the Scheme as outlined within this Petition.

[Doc. No. 1-2 ¶ 63(b)].

The Court concludes the above, alleged breaches by Strickland do not provide an adequate basis for a negligent procurement claim for two reasons.

First, Plaintiffs do not provide a legal basis under Oklahoma law that Strickland, as an insurance agent, had a duty to Plaintiffs to perform the above acts. *See Marino v. State Farm Fire & Cas. Co.*, No. CIV-22-0885-HE, 2023 WL 11915691, at *3 (W.D. Okla. Aug. 7, 2023) (analyzing negligent procurement and misrepresentation claims against an insurance agent and explaining the plaintiffs had cited no basis in Oklahoma case law for their claims that the agent "had a duty to inspect plaintiffs' property and to advise them of the condition of their house" or "had a continuing duty to inspect the property and advise plaintiffs of anything that might impact some future claim"). Moreover, the express terms of Plaintiffs' policy contradict that State Farm or its agents have a duty to inspect the Insured Property before issuance of the policy. [*See* Doc. No.

1-12 at 36 (stating State Farm has "the right but [is] not obligated" to perform inspections of the insured location relating to insurability or premiums to be charged)].

Second, assuming Strickland had the duties enumerated above, causation between the above failures and Plaintiffs' damages is not present. As detailed by Plaintiffs themselves, State Farm did not replace Plaintiffs' dwelling roof because the adjuster did not determine full replacement was warranted. [*See* Doc. No. 1-2 ¶¶ 40(b)–(e)]. Although Plaintiffs claim Strickland breached a duty to them to confirm the condition of the roof before issuing the policy [*see id.* ¶ 63(b)], Plaintiffs have not presented factual allegations that the pre-existing condition of the roof was a basis for either State Farm's denial of Plaintiffs' claim related to the dwelling or State Farm's low claim payment on the shop. [*See id.* ¶¶ 40(b) (detailing that damage estimate fell below Plaintiffs' deductible), 40(c) (detailing damage to shop)]. Accordingly, Plaintiffs' damages flow from the adjuster's assessment of their property damage and State Farm's related denial or low claim payment, not from the type of coverage provided by the policy. *See Weichbrodt v. State Farm Fire & Casualty Co.*, No. CIV-25-360-R, 2025 WL 1848819, at *2 (W.D. Okla. July 2, 2025) (analyzing identical allegations against an agent and stating "[p]laintiff's damages flow from State Farm's allegedly improper interpretation of her policy and adjustment of her claim, not the agent's failure to procure the correct type of policy, type of coverage, or coverage limit").

10

> **B.    State Farm has demonstrated that Plaintiffs do not have a reasonable basis for a negligent misrepresentation/constructive fraud claim against Strickland.**

The Court next considers whether State Farm has demonstrated that Plaintiffs lack a "reasonable basis" for their constructive fraud/negligent misrepresentation claim against Strickland. *Nerad*, 203 F. App'x at 913. "Under Oklahoma law, constructive fraud [or negligent misrepresentation] consists of 'any breach of duty which, without an actually fraudulent intent, gains an advantage to the person in fault, or any one claiming under him, by misleading another to [his] prejudice, or to the prejudice of any one claiming under him[.]'" *McDow v. State Farm Fire & Cas. Co.*, No. CIV-22-927-F, 2022 WL 17960457, at *2 (W.D. Okla. Dec. 27, 2022) (last bracket in original) (quoting 15 Okla. Stat. § 59). Accordingly, Plaintiffs must plead facts which demonstrate (1) Strickland breached a duty to Plaintiffs, (2) Strickland benefited from that breach, and (3) Plaintiffs suffered prejudice because of the breach.

Plaintiffs' negligent misrepresentation claim relies upon allegations that Strickland made inherent representations rather than affirmative statements. [*See* Doc. No. 1-2 ¶ 25(d)]. Plaintiffs state Strickland misrepresented that the Insured Property met underwriting requirements; misrepresented that the Insured Property was eligible for comprehensive full replacement coverage; failed to disclose pre-existing damage; misrepresented that the policy covered all fortuitous losses; and failed to disclose State Farm's tactics regarding bad faith handling of claims. [*Id.* ¶ 73]. Although Plaintiffs state Strickland "misrepresented" the above things, this is a conclusory allegation, as Plaintiffs' complaint does not contain specific statements Strickland made and instead

11

seems to allege the "misrepresentations" were inherent in Strickland's issuance of a policy to Plaintiffs. [*See id.* ¶ 25]. Arguments made in Plaintiffs' Motion support this interpretation of Plaintiffs' complaint. [*See* Doc. No. 14 at 19 ("By selling the policy and binding coverage, Strickland represented that the home complied with State Farm's underwriting guidelines for replacement cost coverage"); *id.* at 9 (noting Strickland's "inherent representations that the property qualified for full replacement cost coverage")].[3]

Plaintiffs claim Strickland had a duty of full disclosure that arose due to Strickland's partial disclosures. [*Id.* at 26–27]. Plaintiffs argue that "[o]nce Strickland *chose* to represent to Plaintiffs that the condition of the insured property was sufficient for coverage under a State Farm policy, Strickland's duty to do so honestly arose." [*Id.* at 26 (emphasis in original)]. Under Oklahoma law, "[a] duty to speak may arise from partial disclosure." *Uptegraft v. Dome Petrol. Corp.*, 1988 OK 129, ¶ 10, 764 P.2d 1350, 1353. However, the partial disclosures Plaintiffs claim Strickland made are all inherent or implied. Plaintiffs do not identify any affirmative statements made by Strickland and instead claim Strickland inherently warranted the condition of the property by selling

---

[3] [*See also* Doc. No. 14 at 25 ("This is relevant because Strickland marketed, represented, and sold the policy as a replacement cost policy. He provided a value to Plaintiffs that represented 100% insurance to value. The only way he could do this—acting on the reasonable care skill and diligence he was duty-bound to use—is by first verifying the condition of the home prior to binding coverage. Thus, by providing this value to Plaintiffs in the form of RCV and resultant coverage limits, Strickland effectively doubled down on his representation that he had inspected the home, considered its condition, and calibrated the policy and its limits accordingly.") (internal citations omitted)].

Plaintiffs a policy. [*See* Doc. No. 14 at 8–9, 19, 25]. The Court declines to conclude that a reasonable basis for a constructive fraud/negligent misrepresentation claim is an inherent or implied representation attendant to the issuance of an insurance policy. If that were the case, almost no circumstances would exist in which an agent could not be joined as a party to a lawsuit relating to coverage. Accordingly, the Court concludes Plaintiffs have not pled facts demonstrating Strickland made a partial disclosure that gave rise to a duty of full disclosure to Plaintiffs.

     Additionally, for the same reasons discussed above regarding Plaintiffs' negligent procurement claim, the Court concludes the alleged misrepresentations or omissions lack a causal connection with Plaintiffs' damages. Plaintiffs' damages stem from State Farm's estimate of damages to their property and refusal to consider hail as part of the date of loss on their claim, not from Plaintiffs' lack of coverage related to the above alleged misrepresentations. *See Porter v. State Farm Fire & Cas. Co.*, No. CIV-25-187-R, 2025 WL 1151682, at *4 (W.D. Okla. Apr. 18, 2025), *reconsideration denied*, CIV-25-187-R, 2025 WL 1830716 (W.D. Okla. July 2, 2025) ("[T]here is no indication that the coverage values are wrong or that the property had some pre-existing condition that negated or limited coverage for the roof. The policy provides coverage for hail damage, but the parties disagree about whether hail damage on the roof was present. Thus, any 'implied' representations by the agent about the property's condition or its eligibility for a replacement cost value policy were either true or not the cause of [the] [p]laintiffs' losses."). Regarding Plaintiffs' allegation that Strickland did not inform Plaintiffs of pre-existing damage that prevented coverage, Plaintiffs have not pled facts demonstrating

13

pre-existing damage prevented full coverage under the policy. [*See* Doc. No. 14 at 19–20 ("Plaintiffs allege Strickland sold, bound, and renewed the policy when Strickland's specialized knowledge meant he knew or should have known about any defect to the roof that would negate full replacement coverage.")]. Plaintiffs' policy provides replacement cost coverage for losses related to wind or hail [*see* Doc. No. 1-12], but the adjuster and State Farm determined wind damage did not merit full roof replacement of the dwelling related to their claim. [*See* Doc. No. 1-2 ¶¶ 40(b)–(m)]. Plaintiffs do not allege facts demonstrating pre-existing damage was the cause of State Farm's denial.[4]

Furthermore, considering Plaintiffs received a policy providing the coverage they requested, the Court does not view the above representations as necessarily false, nor have Plaintiffs pled factual allegations demonstrating their falsity.

Plaintiffs assert that courts, faced with similar factual allegations, have concluded a reasonable basis for a negligent misrepresentation claim exists. [*See* Doc. No. 14 at 27].

---

[4] In *McDow v. State Farm Fire & Casualty Co.*, "State Farm denied the claim on the basis the claimed damage resulted from a pre-existing condition" and the agent "represented to [the plaintiff] that there were no preexisting issues with her property." No. CIV-22-927-F, 2022 WL 17960457, at *1–2 (W.D. Okla. Dec. 27, 2022). Similarly, in *South Sooner Holdings, LLC v. Travelers Indemnity Co. of America*, "Travelers maintained that most of the damage to Plaintiffs' property was caused by preexisting property damage, including age-related deterioration to the roof" and the agent "chose to speak about the lack of preexisting issues with Plaintiffs' property and [ ] those statements were later determined not to be truthful." No. CIV-21-179-PRW, 2022 WL 17831395, at *1–2 (W.D. Okla. Dec. 21, 2022). Likewise, in *Ross v. State Farm Fire & Casualty Co.*, State Farm denied the claim for earthquake damage as "pre-existing" in addition to normal "wear, tear, and deterioration," and the agent had "duped [the plaintiffs] into buying worthless coverage" as the agent had "asserted that their home did not have any 'preexisting issues' that would cause their claim to be denied" and told the plaintiffs their "house was in good shape" when he sold the earthquake coverage. No. CIV-23-00189-JD, 2024 WL 1092540, *1–3 (W.D. Okla. Mar. 13, 2024).

The Court recognizes notable differences between cases cited by Plaintiffs and this case. For example, in those cases, the plaintiffs alleged that the insurance agent made an affirmative misrepresentation regarding their insurance coverage. *See, e.g.*, *Harris v. State Farm Fire & Cas. Co.*, No. CIV-24-149-D, 2024 WL 1957315, at *2 (W.D. Okla. May 3, 2024) ("Plaintiffs allege that their roof was inspected; that [the agent] represented to [p]laintiffs that the roof had been inspected; and that [the agent] represented that the roof was free from any preexisting damage."); *Ervin v. Herb Weaver Ins. Agency, Inc.*, No. CIV-22-935-SLP, 2022 WL 22839581, at *2 (W.D. Okla. Dec. 28, 2022) ("Those misrepresentations included telling [p]laintiffs that their roof met all underwriting requirements and that there was nothing about the condition of the roof that would exclude coverage or render the roof ineligible for the replacement cost coverage in the event of any weather-related event."); *Kyger v. State Farm Fire & Cas. Co.*, 649 F. Supp. 3d 1200, 1204 (W.D. Okla. 2022) ("[The agent] specifically advised and represented to [p]laintiff that her roof was in good condition, qualified, and was eligible for full replacement cost coverage as it met all of State Farm's guidelines and underwriting requirements.") (internal quotation marks omitted). Here, Plaintiffs do not allege an affirmative misrepresentation by Strickland, triggering a duty of full disclosure.

    For the reasons outlined above, the Court concludes that State Farm has demonstrated that Plaintiffs lack a reasonable basis for their constructive fraud/negligent misrepresentation claim against Strickland.

## IV. CONCLUSION

The Court DENIES Plaintiffs' Motion to Remand. Because the Court finds State Farm has an adequate basis for fraudulent joinder, the Court DENIES Plaintiffs' request for attorney fees and costs. The Court DISMISSES Plaintiffs' claims against Strickland without prejudice but without leave to amend in this action.[5]

IT IS SO ORDERED this 21st day of October 2025.

JODI W. DISHMAN
UNITED STATES DISTRICT JUDGE

---

[5] *See Anderson v. Lehman Bros. Bank, FSB*, 528 F. App'x 793, 796 (10th Cir. 2013) (unpublished) (explaining that "[o]nce it determined that [the nondiverse defendant] had been fraudulently joined," the district court "was required to dismiss him from the case without prejudice").